# UNIVERSITY LEGAL SERVICES, INC.
*Protection and Advocacy Program*
*for the District of Columbia*

September 29, 2005

**By Certified Mail, Return Receipt Requested**

Office of Risk Management
ATTN: Claims
441 4th Street, NW, Suite 800 South
Washington, DC 20001

Robert J. Spagnoletti
Attorney General
Office of the Attorney General for the District of Columbia
The John A. Wilson Building
1350 Pennsylvania Ave., N.W., Suite 409
Washington, D.C. 20004

Re:   Notice of Claim Pursuant to D.C. Code § 12-309 on Behalf of Wes Clark, as Executor of the Estate of Mario Medina, and Ralph Linus, Next-of-Kin of Mario Medina

To Whom It May Concern:

Please be advised that, pursuant to D.C. Code § 12-309, this letter is intended to notify the District of Columbia of a claim by the above-mentioned parties against the District of Columbia and its Department of Mental Health for damages. Mario Medina died on April 5, 2005, while being treated at St. Elizabeth's Hospital. His death resulted from the knowing acts and/or omissions of District employees. In the alternative, Mr. Medina's injuries resulted from the negligent acts and/or omissions of District employees. The District had the duty to protect Mr. Medina from harm whiles he was receiving services from the D.C. Department of Mental Health. The District breached this duty and, as a result, Mr. Medina died. Wes Clark, as the executor of Mr. Medina's estate, has a survivor's claim against the District of Columbia. Ralph Linus, as Mr. Medina's next-of-kin, has a wrongful death claim against the District of Columbia.

   **Time of Injury**: The death occurred on or about April 5, 2005.

   **Place of Injury**: The death occurred on the grounds of St. Elizabeth's Hospital.

**Cause of Injury**: The injuries occurred as a result of the knowing or negligent acts and/or omissions by the District and its employees, causing Mr. Medina to die from congestive heart failure. These acts and/or omissions include, but are not limited to, negligent failure to properly monitor the medication administered to Mr. Medina, negligent failure of Mr. Medina's treating psychiatrists to keep Mr. Medina's general medical doctors appraised of his psychiatric medications, negligent failure to monitor the side effects of the medications, negligent failure to properly follow up on Mr. Medina's diagnosis of congestive heart failure after he returned from Greater Southeast Community Hospital, knowing promotion of policies and practices that led to Mr. Medina's death, negligent hiring, negligent retention, negligent supervision, insufficient training, lack of meaningful access to bilingual staff, and failure to hire sufficient staff.

**Circumstances:** Mr. Medina's treatment team at St. Elizabeth's Hospital failed to comply with the nationally recognized standard of care in the follow-up and treatment of his congestive heart failure, thereby contributing substantially to his death. Mr. Medina's psychiatrists had prescribed amantadine to treat his drug-induced Parkinson's disease, and the indications for amantadine warn to closely monitor for congestive heart failure any patient who is taking it. Mr. Medina died of congestive heart failure only two days after he returned to the care of St. Elizabeth's from Greater Southeast Community Hospital. It does not appear that the psychiatrists at St. Elizabeth's informed the treating physicians at Greater Southeast that Mr. Medina was taking amantadine. Also, following his return to St. Elizabeth's, it does not appear that the medical staff or the psychiatric staff at St. Elizabeth's did anything to ensure that Mr. Medina's treatment for congestive heart failure would continue. The medical and psychiatric staffs did nothing to ensure that the risk factors for congestive heart failure, including his amantadine prescription, were eliminated or reduced. Furthermore, the nursing and medical staff at St. Elizabeth's failed to properly assess and monitor the status of his congestive heart failure after Mr. Medina returned to St. Elizabeth's.

Mr. Medina's treatment team also did not follow the nationally recognized standard of medical care in the events leading up to his congestive heart failure diagnosis. The team prescribed an excessive amount of psychotropic medications, leading him to be diagnosed with drug-induced Parkinson's disease. Despite the risk of congestive heart failure, the psychiatric staff at St. Elizabeth's prescribed amantadine to treat the symptoms of Parkinson's disease without properly monitoring the risk of congestive heart failure.

The District has the duty to ensure individuals receiving services from DMH are protected from harm and kept safe. The District was aware or should have been aware that Mr. Medina could be harmed if his medical condition was not properly monitored or he was not properly treated. The District has an affirmative duty to properly train the medical, psychiatric and nursing staff at St. Elizabeth's, and ensure that staffing is adequate to guarantee adequate standards of medical care. The District also has the duty to ensure that its medical, psychiatric and nursing staff comply with the national standard for medical care. District employees have a duty to protect mental health consumers from harm and refrain from harming them. The District and its employees breached these duties and Mr. Medina died as a consequence.

Please do not hesitate to contact me should you have any questions. Mr. Linus and Mr. Clark await the District's response and its efforts to resolve this matter.

Sincerely,

Patrick L. Wojahn
Staff Attorney